FILED'08 JUN 19 11:35USDC-ORM

# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF OREGON

| | | |
|---|---|---|
| FAWN CHERRY-YOUNG, | ) | |
| | ) | |
| Plaintiff | ) | Civil No. 07-1110-CL |
| | ) | |
| v. | ) | FINDINGS AND |
| | ) | RECOMMENDATION |
| MICHAEL J. ASTRUE, | ) | |
| Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

CLARKE, Magistrate Judge:

Plaintiff Fawn Cherry-Young ("Cherry-Young") seeks judicial review of the Social

Security Commissioner's final decision denying her application for Supplemental Security

Income ("SSI") under Title XVI of the Social Security Act. This court has jurisdiction under 42

U.S.C. §§ 405(g) and 1383(c). For the reasons below, I recommend the Commissioner's decision

be reversed and remanded for the immediate calculation and award of benefits.

## BACKGROUND

Born in 1977, Cherry-Young completed high school and approximately one year of

college. Tr. 147, 457.[1]  Between an unspecified date and February 2002 Cherry-Young reports

work as customer service representative.  Tr. 142.

Cherry-Young applied for SSI on January 27, 2004, alleging disability since February

2002, due to post-traumatic stress disorder ("PTSD"), agoraphobia, depression, anxiety,

migraines, and attention-deficit disorder ("ADD").  Tr. 141, 457.

Cherry-Young's application was denied initially and upon reconsideration.  Tr. 461-64,

466-68.  A hearing was held before an Administrative Law Judge ("ALJ") on July 20, 2006, and

the ALJ found Cherry-Young not disabled on August 2, 2006.  Tr. 17-29, 493-33.  The Appeals

Council accepted additional evidence into the record, but denied review of the ALJ's decision.

Tr. 7-10.  This action made the ALJ's decision the Commissioner's final decision.  Cherry-Young

seeks now review of the ALJ's decision finding.

## DISABILITY ANALYSIS

The Commissioner engages in a sequential process encompassing between one and five

steps in determining disability under the meaning of the Act.  20 C.F.R. § 416.920, *Bowen v.*

*Yuckert*, 482 U.S. 137, 140 (1987).  Cherry-Young challenges the ALJ's evaluation of the

evidence and his conclusions at step five.

At step one, the ALJ determines if the claimant is performing substantial gainful activity

("SGA").  If so, then the claimant is not disabled.  20 C.F.R. § 416.920(a)(4)(I).

At step two, the ALJ determines if the claimant has "a severe medically determinable

physical or mental impairment" that meets the twelve-month durational requirement.  20 C.F.R.

---

[1]Citations "Tr." refer to indicated pages in the official transcript of the administrative
record filed with the Commissioner's Answer October 16, 2007 (Docket #13).

§§ 416.909; 416.920(a)(4)(ii).  If the claimant does not have such a severe impairment, she is not

disabled.  *Id.*

    At step three, the ALJ determines whether the severe impairment meets or equals a

"listed" impairment in the regulations.  20 C.F.R. § 416.920(a)(4)(iii).  If the impairment is

determined to meet or equal a listed impairment, then the claimant is disabled.

    If adjudication proceeds beyond step three, the ALJ must first evaluate medical and other

relevant evidence in assessing the claimant's residual functional capacity ("RFC").  The

claimant's RFC is an assessment of work-related activities that the claimant may still perform on

a regular and continuing basis, despite limitations imposed by his impairments.  20 C.F.R.

§ 404.1520(e); Social Security Ruling ("SSR") 96-8p (July 2, 1996) (available at 1996 WL

374184).  The ALJ uses this information to determine if the claimant can perform past relevant

work at step four.  20 C.F.R. § 416.920(a)(4)(iv).  If the claimant can perform her past relevant

work she is not disabled.  *Id.*

    At step five, the Commissioner must determine if the claimant is capable of performing

work existing in the national economy. *Yuckert*, 482 U.S. at 142; *Tackett v. Apfel*, 180 F.3d 1094,

1099 (9th Cir.1999); 20 C.F.R. §§ 416.920(a)(4)(v), 416.920(f).

    The initial burden of establishing disability rests upon the claimant. *Tackett*, 180 F.3d at

1098.  If the process reaches step five, the burden shifts to the Commissioner to show that "the

claimant can perform some other work that exists in "significant numbers" in the national

economy, taking into consideration the claimant's residual functional capacity, age, education,

and work experience." *Id.* at 1100.  If the Commissioner meets this burden the claimant is not

3 - FINDINGS AND RECOMMENDATION

disabled. 20 C.F.R. § 416.920(g).

## THE ALJ'S FINDINGS

At step two in the sequential proceedings, the ALJ found Cherry-Young's "knee problems," "depression with possible bipolar feature," PTSD, and personality disorder "severe." Tr. 28. The ALJ found that these impairments did not meet or equal a "listed" impairment at step three in the proceedings and assessed Cherry-Young's RFC. *Id.* The ALJ assessed non-exertional limitations but found Cherry-Young precluded from climbing ropes, ladders, and scaffoldings," with no more than occasional bending, stooping, kneeling, crouching, or crawling. Tr. 26. The ALJ additionally found that Cherry-Young could perform "simple, routine, repetitive type work with no public contact." *Id.* The ALJ subsequently found that Cherry-Young could not perform her past relevant work at step four, but concluded that she could perform work in the national economy at step five. Tr. 28. The ALJ therefore found Cherry-Young not disabled. Tr. 29.

## STANDARD OF REVIEW

The reviewing court must affirm the Commissioner's decision if the Commissioner applied proper legal standards and the findings are supported by substantial evidence in the record. 42 U.S.C. § 405(g); *Batson v. Commissioner for Social Security Administration*, 359 F.3d 1190, 1193 (9th Cir. 2004). This court must weigh the evidence that supports and detracts from the ALJ's conclusion. *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035 (9th Cir. 2007)(citing *Reddick v. Chater*, 157 F.3d 715, 720 (9th Cir. 1998)). The reviewing court may not substitute its judgment for that of the Commissioner. *Id.* (citing *Robbins v. Social Security Administration*,

466 F.3d 880, 882 (9th Cir. 2006)), *see also Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir.

2001). Variable interpretations of the evidence are insignificant if the Commissioner's

interpretation is a rational reading. *Id.*, *see also Batson*, 359 F.3d at 1193.

## DISCUSSION

Cherry-Young challenges the ALJ's assessment of a treating psychologist's opinion, her

own testimony, and that of a lay witness.

## I.    Medical Source Statements

Cherry-Young contends that the ALJ improperly rejected the opinion of her treating

psychologist, Kali Miller, Ph.D.

### A.    Legal Standard

The ALJ must generally accord greater weight to a treating physician or psychologist's

opinion than the opinion of an examining medical source. *Edlund*, 253 F.3d at 1157. The ALJ

must give specific, legitimate reasons supported by substantial evidence for rejecting a

controverted opinion from a treating physician and "clear and convincing reasons" for rejecting

an uncontroverted opinion. *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005). This

evaluation may set out a detailed and thorough summary of the facts and conflicting clinical

evidence. *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989).

### B.    Discussion: Dr. Miller

Psychologist Dr. Miller is an acceptable medical source under the Commissioner's

regulations. 20 C.F.R. § 416.913(a)(1)(2), SSR 06-03p at *1 (August 9, 2006) (available at 2006

WL 2329939).

5 -  FINDINGS AND RECOMMENDATION

Dr. Miller treated Cherry-Young between September 2002 and May 2006.  Tr. 303, 385.
Dr. Miller met Cherry-Young weekly throughout most of this period.  Dr. Miller is the only
medical source of record whose longitudinal treating relationship with Cherry-Young runs
throughout the period in question.  The record therefore contradicts the ALJ's finding that Dr.
Miller "is not the claimant's primary mental health care provider or therapist."  Tr. 19.

Dr. Miller also treated Cherry-Young in conjunction with psychiatrists and physicians
who concurrently prescribed psychiatric medication.  Tr. 279, 319, 330, 332, 334, 337, 341, 504.
The ALJ's inference that Dr. Miller's opinion should be additionally discarded because Dr. Miller
did not prescribe therapeutic medication should also not be sustained.

The ALJ noted that Dr. Miller initially assessed a "rule out" agoraphobia diagnosis, and
found that Dr. Miller's subsequently consistent agoraphobia references contradict her initial
assessment.  Tr. 20.  The court understands that physicians or psychologists may assess a "rule
out" diagnosis to indicate preliminary uncertainty before enough clinical evidence is present to
confirm or reject a diagnosis.  Refining the diagnosis following further clinical treatment does
not constitute an inconsistent diagnostic assessment.

The ALJ also found that Cherry-Young's activities of daily living contradicted Dr.
Miller's agoraphobia assessment.  Tr. 20.  Cherry-Young's activities of daily living are discussed
in analysis of Cherry-Young's credibility below; the court presently notes that the ALJ's findings
regarding these activities are not based upon the record.  For this reason, the ALJ's inference that
Dr. Miller's agoraphobia diagnosis is contradicted by the record should not be affirmed.

Finally, the ALJ noted that Dr. Miller completed a form solicited by Cherry-Young's

6 -  FINDINGS AND RECOMMENDATION

counsel. Tr. 21 (citing tr. 442-55). This itself is not an adequate reason for rejecting a physician opinion. *Nguyen v. Chater*, 100 F.3d 1462, 1464 (9th Cir. 1996). The ALJ may reject such opinions when they are unsupported by clinical notes or explanations. *Id.* Dr. Miller's record, detailed above, contains extensive treatment notes. Tr. 280-305, 384-416. Suggesting that Dr. Miller completed only a "check the box form" without supporting clinical notes misconstrues Dr. Miller's opinion. This reasoning should not be affirmed.

In summary, the ALJ misconstrued Dr. Miller's opinion and failed to provide adequate reasons for rejecting it. The ALJ's analysis of Dr. Miller's clinical notes and opinion should not be affirmed.

## II.    Credibility

Cherry-Young also contends that the ALJ erroneously found her not credible.

### A.    Legal Standard

Once a claimant shows an underlying impairment which may "reasonably be expected to produce pain or other symptoms alleged" the ALJ must provide "clear and convincing" reasons for finding a claimant not credible. *Lingenfelter*, 504 F.3d at 1036 (citing *Smolen v. Chater*, 80 F.3d 1273, 1281 (9th Cir. 1996)). The ALJ's credibility findings must be "sufficiently specific to permit the reviewing court to conclude that the ALJ did not arbitrarily discredit the claimant's testimony." *Orteza v. Shalala*, 50 F.3d 748, 750 (9th Cir. 1995) (citing *Bunnell v. Sullivan*, 947 F.2d 341, 344 (9th Cir. 1991) (en banc)). The ALJ may consider objective medical evidence and the claimant's treatment history, as well as the claimant's daily activities, work record, and observations of physicians and third parties with personal knowledge of the claimant's functional

7 - FINDINGS AND RECOMMENDATION

limitations. *Smolen*, 80 F.3d at 1284. The ALJ may additionally employ ordinary techniques of credibility evaluation, such as weighing inconsistent statements regarding symptoms by the claimant. *Id.* Once a claimant shows an underlying impairment, the ALJ may not, however, make a negative credibility finding "solely because " the claimant's symptom testimony "is not substantiated affirmatively by objective medical evidence." *Robbins*, 466 F.3d at 883.

**B.      Discussion**

The ALJ found Cherry-Young not credible due to her allegedly contradictory testimony, her activities of daily living, and the ALJ's own observations. Tr. 21, 25. The ALJ also inferred that Cherry-Young's applications for crime victims' assistance funds and social security benefits were motivated by secondary gain. *Id.*

**a.      Cherry-Young's Contradictory Testimony and "Manipulation" of Medical Sources**

The ALJ twice stated that Cherry-Young deliberately mislead Dr. Miller and others about her marital status. Tr. 21, 25. The court notes Dr. Miller's references to Cherry-Young's male partners, but cannot ascertain Cherry-Young's marital status from references in the record. Tr. 390, 396, 416, 500. For this reason, the court cannot affirm the ALJ's inference that Cherry-Young deliberately made false statements regarding her husband, ex-husband, and fiancé throughout the period in question.

The ALJ also found that Cherry-Young "on multiple occasions denied sexual molestation." Tr. 25 (citing exhibit 9F/82 [tr. 329]). The ALJ's citation does not support this finding. Tr. 329. Instead, the indicated report contradicts the ALJ's finding, as Cherry-Young reported past sexual abuse at this time. Tr. 328. The record also shows that Cherry-Young

8 – FINDINGS AND RECOMMENDATION

described her history of sexual abuse throughout her treatment with Dr. Miller. Tr. 284, 299, 301, 303, 397, 393, 400. The ALJ's inference from his indicated citation that Cherry-Young fabricated her history of abuse is not based upon the record and should not be sustained.

The ALJ noted Cherry-Young's father's allegation that she stole $40,000 from him and his denial that he abused Cherry-Young. Tr. 25. Cherry-Young's father did not submit testimony directly to the record before this court. The ALJ's inferences are based upon Dr. Miller's report of Cherry-Young's report of a detective's report and an associated detective's report. Tr. 391, 415. The record contains no direct statement from Cherry-Young's father and this court will not engage in such speculation.

Finally, the ALJ found that Cherry-Young conducted a "planned scheme to misrepresent facts to Dr. Miller." Tr. 21. This court cannot ascertain that the record supports such a finding. This finding should not be affirmed.

### b.    Activities of Daily Living

The ALJ's credibility finding also cited Cherry-Young's activities of daily living: "Given the claimant's ability to travel when needed, make friends (such as her husband's ex-interim girlfriend) [and] participate in complex bankruptcy proceedings." Tr. 21. The ALJ may cite activities of daily living to show that a claimant's activities contradict allegations of total disability. *Orteza*, 50 F.3d at 759. However, these activities must be transferable to a work setting. *Orn v. Astrue*, 495 F.3d 625, 639 (9th Cir. 2007).

The activities cited above do not constitute daily activity approaching exertion required for employment. The record shows that Cherry-Young traveled to New York with reluctance and

9 - FINDINGS AND RECOMMENDATION

anxiety, relying upon medication, and stayed inside throughout the trip. Tr. 385, 514, 518, 526-27. Cherry-Young and the lay witness both indicate that Cherry-Young is afraid of people, rarely leaves her house, and has few friends. Tr. 119-120, 502, 506, 524, 526. Cherry-Young's limited use of the library furthermore is not analogous to work activity. *Orn*, 625 F.3d at 639. Finally, Cherry-Young testified that she did not understand the details of her bankruptcy proceeding and that it was conducted with the help of a legal aid clinic. Tr. 521. For these reasons, the ALJ's inference that Cherry-Young performed substantial daily activities is contradicted by the record and should not be affirmed.

### c.    Secondary Gain

This court does not chastise disability applicants for secondary gain: an application for benefits, by definition, is an application for monetary compensation. *Ratto v. Secretary of Health and Human Services*, 839 F. Supp. 1415, 1428 (D. Or. 1993). The ALJ's inference that Cherry-Hill's credibility is impugned by secondary gain is not supported by the record.

### d.    The ALJ's Observations

While personal observations suggesting that the claimant's behavior does not correspond to medical evidence are permissible, the court frowns upon "sit and squirm tests." *Verduzco v. Apfel*, 188 F.3d 1087, 1090 (9th Cir. 1999); *Perminter v. Heckler*, 765 F.2d 870, 872 (9th Cir. 1985).

### C.    Credibility Conclusion

The ALJ's credibility finding is not based upon the record. The ALJ's credibility finding is furthermore disrespectful of Cherry-Young and based upon inferences contradicted by the

record.  This finding should not be affirmed.

## III.    Lay Witness Testimony

Cherry-Young's friend, Jason Sherriff, submitted a lay witness statement to the record on

April 10, 2003.  Tr. 118-29.  Sherriff stated that Cherry-Young has no contact with her family,

has child-like speech, and leaves her house only one or two times per week to attend medical

appointments only.  Tr. 118-19.  Sherriff also stated that Cherry-Young refuse to leave her home

or allow others inside and is "not able to deal well" with other people.  Tr. 120-21.  In addition,

Sherriff stated that Cherry-Young bathes, washes her hair, and brushes her teeth between three

and six times per day.  Tr. 125.  Finally, Sherriff stated that Cherry-Young calls him when she

needs shopping completed or garbage taken out (tr. 126), and concluded, "she cannot seem to

function in daily life unless she follows her exact regimen daily."  Tr. 128.

The ALJ omitted discussion of this testimony.  The ALJ's silent rejection of probative lay

witness testimony is erroneous.  *Stout v. Barnhart*, 154 F.3d 1050, 1056 (9th Cir. 2006).  This

rejection should not be sustained.

## REMAND

The ALJ erroneously evaluated Dr. Miller's opinion and Cherry-Young's testimony.  The

ALJ also erroneously omitted Sherriff's testimony.

The decision whether to remand for further proceedings or for immediate payment of

benefits is within the discretion of the court.  *Harman v. Apfel*, 211 F.3d 1172, 1178 (9th Cir.

2000.), *cert. denied*, 531 U.S. 1038 (2000).  The issue turns on the utility of further proceedings.

A remand for an award of benefits is appropriate when no useful purpose would be served by

11 -  FINDINGS AND RECOMMENDATION

further administrative proceedings or when the record has been fully developed and the evidence is not sufficient to support the Commissioner's decision. *Rodriguez v. Bowen,* 876 F.2d 759, 763 (9th Cir. 1989).

Under the "crediting as true" doctrine, evidence should be credited and an immediate award of benefits directed where "(1) the ALJ has failed to provide legally sufficient reasons for rejecting such evidence, (2) there are no outstanding issues that must be resolved before a determination of disability can be made, and (3) it is clear from the record that the ALJ would be required to find the claimant disabled were such evidence credited." *Harman,* 211 F.3d at 1178 (quoting *Smolen v. Chater,* 80 F.3d 1273, 1292 (9th Cir. 1996). The "crediting as true" doctrine is not a mandatory rule in the Ninth Circuit, but leaves the court flexibility in determining whether to enter an award of benefits upon reversing the Commissioner's decision. *Connett v. Barnhart,* 340 F.3d 871, 876 (9th Cir. 2003) (citing *Dodrill v. Shalala,* 12 F.3d 915, 919 (9th Cir. 1993)); *Nguyen,* 100 F.3d at 1466-67; *Bunnell v. Sullivan,* 947 F.2d 341, 348 (9th Cir. 1991).

Correction of the ALJ's errors resolves all issues and thus compels a determination of disability, demonstrating that further proceedings would serve no useful purpose. Here, the ALJ's assessment of Dr. Miller is not based upon the record. If credited, the limitations described in her opinions establish disability. Specifically, Dr. Miller's assessment of Cherry-Young's marked and extremely marked functional limitations establish that Cherry-Young meets criteria for Listings 12.02, 12.04, and 12.06. Tr. 452. Further analysis is unnecessary because once a claimant meets a listing she is presumptively found disabled. 20 C.F.R. § 416.920(a)(4)(iii).

12 - FINDINGS AND RECOMMENDATION

The court nonetheless notes that crediting Dr. Miller's testimony allows the court to credit Cherry-Young's testimony. *Harman*, 211 F.3d at 1178. Crediting Dr. Miller's opinion also compels the court to credit the observations of lay witness Jason Sherriff because his observations are consistent with the medical record and establish work-related limitations. *Schneider v. Comm'r*, 223 F.3d 968, 976 (9th Cir. 2000).

If this improperly rejected evidence is credited the vocational expert's testimony additionally establishes that Cherry-Young would be unable to perform work existing in the national economy at step five in the sequential proceedings. Tr. 532.

Because there are sufficient findings to establish disability at steps three and five of the sequential proceedings if the improperly rejected evidence is credited as true, this court exercises its discretion and recommends remand for an award of benefits.

## RECOMMENDATION

For the reasons set forth above, the Commissioner's decision that Cherry-Young did not suffer from disability and is not entitled to benefits under Title XVI of the Social Security Act is not based upon correct legal standards and is not supported by substantial evidence. The ALJ's determination that Cherry-Young did not suffer from a disability should be reversed and remanded pursuant to sentence four of 42 U.S.C. § 405(g) for calculation and award of benefits.

*This recommendation is not an order that is immediately appealable to the Ninth Circuit Court of Appeals*. Any notice of appeal pursuant to Rule 4(a)(1), Federal Rules of Appellate Procedure, should not be filed until entry of the district court's judgment or appealable order.

*Objections to this Report and Recommendation, if any, are due by July 3, 2008. If objections*

13 -  FINDINGS AND RECOMMENDATION

*are filed, any responses to the objections are due 14 days after the objections are filed*.  Failure

to timely file objections to any factual determinations of the Magistrate Judge will be considered

a waiver of a party's right to de novo consideration of the factual issues and will constitute a

waiver of a party's right to appellate review of the findings of fact in an order or judgment

entered pursuant to the Magistrate Judge's recommendation.

DATED this ___*19*___ day of June, 2008.

Mark D. Clarke
United States Magistrate Judge

14 - FINDINGS AND RECOMMENDATION